O

# United States District Court
# Central District of California

| | |
|---|---|
| KEYLING EDGELINA VELASQUEZ PINELL,<br><br>                    Plaintiff,<br><br>     v.<br><br>PAMELA BONDI et al.,<br><br>                    Defendants. | Case № 5:26-cv-00129-ODW (ASx)<br><br>**ORDER GRANTING UNOPPOSED *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE [2]** |

## I.   INTRODUCTION

Petitioner Keyling Edgelina Velasquez Pinell brings this petition for a writ of habeas corpus against Respondents Pamela Bondi, U.S. Attorney General; Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); DHS; Warden of Adelanto Immigration and Customs Enforcement ("ICE") Processing Center; and Jaime Rios, ICE Acting Field Office Director.  (Pet. ¶¶ 11–16, Dkt. No. 1.)  Petitioner also moves *ex parte* for an order requiring her release from custody and enjoining Respondents from re-detaining her absent this Court's order or a pre-deprivation bond hearing.  (Ex Parte Appl. ("TRO") 15–16, Dkt. No. 2.)  Respondents failed to timely oppose the request.  For the reasons discussed below, the Court **GRANTS** the TRO.

## II. BACKGROUND

Petitioner is a citizen of Nicaragua. (Pet. ¶ 11.) On December 12, 2022, she was paroled into the United States for the purpose of applying for asylum. (*Id.* ¶ 3–4.) DHS determined that Petitioner was not a flight risk or danger to the community and released Petitioner from custody on her own recognizance. (*Id.* ¶¶ 4, 37.) The conditions of her release required her to periodically report to DHS. (*Id.* ¶ 3.)

Petitioner fully complied with the terms of her release and reported to her local ICE office as required. (*Id.* ¶ 5.) In April 2023, Petitioner filed for asylum. (*Id.* ¶ 6.) However, on December 18, 2025, during a regularly scheduled check-in, ICE detained Petitioner. (*Id.* ¶ 7.) ICE transferred Petitioner to ICE Adelanto Processing Center, where she currently remains detained. (*Id.*)

Prior to her re-detention, Petitioner was not given notice of ICE's intention to re-detain her and was not provided with any information about why her prior release on parole was revoked. (*Id.* ¶ 8.)

Based on these allegations, on January 12, 2026, Petitioner filed a Petition for Writ of Habeas Corpus on the grounds that her detention violates her Fifth Amendment right to due process. (*Id.* ¶¶ 20–28.) That same day, Petitioner filed this Application for a Temporary Restraining Order and Preliminary Injunction. (TRO.) Petitioner requests that the Court order Respondents to immediately release Petitioner on her previous terms of parole and enjoin Respondents from re-detaining Petitioner absent further order of this Court. (*Id.* at 15–16.) In the alternative, Petitioner requests that the Court order Respondents to immediately release Petitioner from custody and enjoin Respondents from re-detaining Petitioner unless Respondents demonstrate at a pre-deprivation bond hearing, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community, such that physical custody is required. (*Id.*) Respondents failed to timely oppose the TRO.

### III. LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain relief, a plaintiff must meet the "*Winter*" factors: (1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

Courts in the Ninth Circuit evaluate the *Winter* factors on a sliding scale approach, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the sliding scale approach, a plaintiff is entitled to a preliminary injunction if he has raised "serious questions going to the merits . . . and the balance of hardships tips sharply in [his] favor," "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

### IV. DISCUSSION

The Court first considers whether it has jurisdiction to review Petitioner's TRO, then turns to the merits of the TRO.

**A. Jurisdiction**

The Court must first consider whether it has jurisdiction to review Petitioner's TRO. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction."). Under 8 U.S.C. § 1252(g), a court does not

have jurisdiction to review "any cause or claim" challenging the execution of "removal orders." However, a "district court may consider a purely legal question that does not challenge" the execution of a removal order. *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004).

Here, Petitioner raises a question of law as to whether her re-detention complies with due process and here is no underlying final order of removal in this case. (*See generally* TRO.) As such, the Court does not review the Attorney General's authority to execute removal proceedings. Instead, the Court confines its analysis to the narrow legal question properly before it: whether Petitioner's re-detention violates her right to due process. As the Court addresses only the legality of Petitioner's re-detention, the Court has jurisdiction to review Petitioner's TRO. *See Hovsepian*, 359 F.3d at 1155.

Moreover, under 28 U.S.C. § 2241, the Court has authority to adjudicate a habeas corpus petition alleging that a person is being held in custody "in violation of the Constitution or laws or treaties of the United States." "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, Petitioner seeks immediate release from custody, which she contends violates her constitutional rights. (TRO 6–16.) Thus, Petitioner properly invokes the Court's habeas jurisdiction.

B.  **Merits of the TRO: *Winter* Factors**

Having determined that the Court has jurisdiction to review Petitioner's TRO, the Court now turns to its merits under the *Winter* factors.

1.  *Likelihood of Success on the Merits*

The first *Winter* factor "is the most important," and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). Petitioner argues that she is likely to succeed on the merits because her continued detention violates her due process rights. (TRO 7–13.) Petitioner contends that although "she complied with her reporting requirements of

release," Respondents "revoked" Petitioner's release "without any notice or any opportunity to contest her detention before a neutral arbiter." (*Id.* at 7–8.) Petitioner argues that because "she has no criminal record," "has never absconded from immigration authorities," and "has been engaging with the legal procedures laid out in the immigration law[s]," her "re-detention serves no non-punitive purpose." (*Id.* at 8.)

Petitioner is likely to show that her re-detention violates her due process rights. The Fifth Amendment protects all persons from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is settled law that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The government's release of an individual from detention creates "'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Here, when Petitioner was released from her detention, she acquired a liberty interest which entitles her to due process. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). Thus, the procedures used against her must adequately protect that interest. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (noting that once an alien "passed through our gates," they "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law"). As Respondents re-detained Petitioner without notice or a hearing, (TRO 7); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (holding that a noncitizen has a "constitutional right to a hearing before a neutral decisionmaker prior to any future detention"), Petitioner shows a likelihood of success on the merits of her due process claim.

### 2. Likelihood of Irreparable Harm

As to the second *Winter* factor, Petitioner contends that she will suffer irreparable harm in the absence of a TRO because she will continue to be unlawfully detained. (*Id.* at 13.) "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[I]n cases involving a constitutional claim, a likelihood of success on the merits usually establishes irreparable harm." *Baird*, 81 F.4th at 1048.

Here, as discussed above, Petitioner brings a constitutional due process claim which is likely to succeed on the merits. Accordingly, the Court finds that she has established irreparable harm, and thus the second *Winter* factor also weighs in favor of temporary injunctive relief.

### 3. Balance of Equities and Public Interest

The last two *Winter* factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (citing *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)). "[T]he public has a strong interest in upholding procedural protections against unlawful detention," and "in the efficient allocation" of resources. *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

The balance of hardships tips strongly in Petitioner's favor as she would suffer great hardship if the Court were to deny her TRO. *See Winter*, 555 U.S. at 26 (requiring the balance of hardships to "tip strongly" in the moving party's favor). Specifically, Petitioner would continue to be detained for an indefinite amount of time without due process, even though she "at all times complied with the requirement to report periodically" to ICE. (TRO 5.) In contrast, Respondents "cannot reasonably assert" they are "harmed in any legally cognizable sense by being enjoined from

6

constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). Thus, the last two *Winter* factors also weigh in favor of an injunction.

Having found that all *Winter* factors weigh in favor of injunctive relief, the Court **GRANTS** Petitioner's TRO.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's TRO. (Dkt. No. 2.) It is hereby **ORDERED** that:

- Respondents shall **IMMEDIATELY RELEASE** Petitioner;
- Respondents are **ENJOINED** from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice and a timely hearing before a neutral arbiter. At any such hearing, Respondents shall bear the burden of establishing that Petitioner poses a risk of flight or danger to the community; and
- Respondents shall **SHOW CAUSE**, in writing only, to be received by the Court no later than **January 21, 2026**, as to why the Court should not issue a preliminary injunction in this case. Petitioner may file a reply by **January 25, 2026**. The Court **SETS** a hearing on the preliminary injunction for **January 28, 2026, at 2:30 p.m.**, via Zoom.

**IT IS SO ORDERED.**

January 14, 2026

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**